IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-17-486-SLP |
| AAA CONSTRUCTION LLC, a/k/a CONSTRUCTION, POOLS & BUILDINGS, LLC, an Oklahoma limited liability company, | ) ) ) ) ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Plaintiff's Motion for Summary Judgment [Doc. No. 17]. Defendant has responded and Plaintiff has replied [Doc. Nos. 18 and 19]. The matter is fully briefed and ready for determination.[1]

## **I.    Introduction**

In this declaratory judgment action, Plaintiff, Country Mutual Insurance Company ("CMIC"), seeks a ruling from the Court that it has no duty to defend or indemnify Defendant, AAA Construction Pools & Buildings, LLC (AAA Construction), for claims made against AAA Construction in an underlying state court action. CMIC has filed a motion for summary judgment asserting the undisputed factual record demonstrates the claims at issue in the state court action are not covered by the insurance policy issued to AAA Construction and/or are subject to the policy's coverage exclusions. CMIC also

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

moves for summary judgment as to AAA Construction's counterclaim for bad faith breach of insurance contract. For the reasons set forth below, the Court finds CMIC is not entitled to summary judgment on the coverage issue and that CMIC fails to meet its burden of proof to show the Policy's exclusions preclude coverage. The Court further finds CMIC is not entitled to summary judgment on AAA Construction's bad faith counterclaim.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court views "the facts and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." *iMatter Utah v. Njord*, 774 F.3d 1258, 1262 (10th Cir. 2014) (citation omitted).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir. 2019) (quotations omitted). "These facts must establish, at a minimum, an inference of the presence of each element essential to the case." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137-38 (10th Cir. 2016) (quotations omitted). The movant is entitled to summary judgment if the nonmoving party cannot provide facts "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 1138 (quotations omitted). The essential inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III. **Undisputed Facts**

AAA Construction is the named insured under Policy No. AM 9102725-05 (Policy) issued by CMIC with a policy period of August 10, 2016 through August 10, 2017. *See* Policy [Doc. No. 17-8].

On October 21, 2015, Jeffrey T. Shaver, M.D. and Tammy Shaver (the Shavers), entered into two contracts with AAA Construction for the construction of a garage (the Garage Contract) and the construction of a barn (the Barn Contract) on their property located in Edmond, Oklahoma. *See* Garage Contract [Doc. No. 17-9] and Barn Contract [Doc. No. 17-10]. The Contracts each contain the same provisions and warranties. *See id*.

On September 19, 2016, the Shavers filed a state-court action (the State Action) against Timothy Berry (Mr. Berry) d/b/a AAA Construction Buildings, Concrete & Landscaping & AAA Construction, Pools & Buildings, L.L.C. (AAA Construction) for: (1) Deceptive Trade Practices; (2) Actual Fraud; (3) Constructive Fraud; (4) Negligent Misrepresentation; (5) Breach of Contract; and (6) Rescission. *See* Petition, Case No. CJ-2016-167, District Court of Logan County, State of Oklahoma [Doc. No. 17-1].[2]

In the State Action, the Shavers allege, inter alia, that after substantial completion of the Garage, a Land Representative of Southern Star Central Gas Pipeline (Southern Star) notified the Shavers and Mr. Berry that AAA Construction had improperly constructed the

---

[2] Mr. Berry is the sole member and manager of AAA Construction. *See* Disclosure Statement [Doc. No. 22].

3

Garage over two high-pressure gas pipelines and the utility easements associated with them. Pet., ¶ 9; *see also* Am. Pet., ¶ 9.

On February 16, 2017, CMIC advised AAA Construction that it was denying coverage under the Policy for the claims asserted in the State Action. CMIC acknowledged that allegations in the Petition "that AAA Construction damaged [the Shavers'] property through negligent construction of the garage . . . meet the requirements of the Policy's definition of "property damage[.]" *See* Correspondence [Doc. No. 17-11] at 8. But CMIC denied coverage on grounds the "alleged faulty workmanship of AAA Construction does not constitute an "occurrence" under the Policy. *See id*. at 8-10. CMIC further identified multiple exclusions that applied to preclude coverage under the Policy. *See id*. at 10-13.

On March 21, 2017, counsel for AAA Construction sent correspondence to CMIC in reference to a motion filed in the State Action for leave to amend the Petition and specifically referenced a claim for negligence and "eight areas of damage" most of which did "not fall within the exclusions" referenced in CMIC's February 16, 2017 letter. CMIC did not respond to the correspondence but instead filed the instant action for declaratory relief on April 26, 2017.

Thereafter, on May 19, 2017, the Shavers filed the Amended Petition in the State Action and brought the following claims: (1) Deceptive Trade Practices; (2) Actual Fraud; (3) Constructive Fraud; (4) Negligent Misrepresentation; (5) Breach of Contract; (6) Negligence; (7) Economic and Actual Damages; (8) Multiple Damages; (9) Exemplary Damages; (10) Rescission and Other Orders to Restore; and (11) Attorney Fees. *See* Am. Pet. [Doc. No. 17-5]. The Shavers allege AAA Construction was negligent for constructing

4

"on top of a working utility line[.]" *See* Am. Pet., ¶¶ 33-36. And the Shavers' claim for damages includes expenses to remove trees, fix sprinklers and fix a fence. Am. Pet., ¶ 37. The Shavers also seek damages for "loss of use," "[c]ost of replacement," "[c]osts of repairs," "[r]emedial costs and/or costs of completion," and "[r]easonable and necessary engineering and/or consulting fees." *Id.*[3]

## IV. Governing Law

Oklahoma law governs the issues presented in this action, where federal subject matter jurisdiction is predicated on diversity of citizenship. *See, e.g., Universal Underwriters, Ins. Co. v. Winton*, 818 F.3d 1103, 1105-06 (10th Cir. 2016). Neither party disputes that the Policy should be interpreted in accordance with Oklahoma law.

### A. Interpretation of Insurance Contracts

Under Oklahoma law, "[w]hen policy provisions are clear, consistent, and unambiguous, [the court must] look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent." *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014). "The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).[4]

The insured has the burden of showing that a covered loss occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the

---

[3] These same damages were alleged in the Petition. *See* Pet., ¶ 33.

[4] Neither party claims any provisions of the Policy in dispute are ambiguous.

policy. *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (Once coverage is established, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred and the insurer must prove facts that bring a loss within an exclusionary clause of the policy."); *Fehring v. Universal Fid. Life Ins. Co.*, 721 P.2d 796, 799 (Okla. 1986) (insurer bears burden of proving applicability of exclusionary clause). An exclusion is a policy term eliminating coverage where it otherwise would have existed under the general declaration. *Dodson*, 812 P.2d at 377. "[P]olicy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy . . . In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." *Id.* at 377 n. 11.

### B. Duty to Defend / Indemnify

Under Oklahoma law, "[a] liability insurance policy generally contains two basic duties – the duty to defend and the duty to indemnify[.]" *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 303 (Okla. 1996). "The insurer's primary duty is to provide indemnity for loss or to pay a specified amount upon determinable contingencies." *Id*. "The duty to defend is separate from, and broader than, the duty to indemnify." *Id*. An insurer has a duty to defend if the facts raise the mere "potential of liability." *Id*. "[O]nce an insurer's duty to defend is triggered, it must defend all claims in

a lawsuit" even those that are not covered. *Automax Hyundai South, L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 806 (10th Cir. 2013) (applying Oklahoma law and noting insurer "offered no authority demonstrating that Oklahoma deviates from this rule and circumscribes the duty to defend if the majority of the conduct alleged in the lawsuit would not be covered under an indemnity provision").[5]

## V. **Discussion**

### A. **Coverage**

CMIC first seeks summary judgment on grounds "the alleged faulty workmanship of AAA Construction" does not constitute an "occurrence" under the Policy. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *See* Policy at 88, Section II – Liability, ¶ F(13). The term "accident" is not defined in the Policy.

CMIC relies upon *Adair Grp., Inc. v. St. Paul Fire & Marine Ins. Co.*, 477 F.3d 1186, 1187-88 (10th Cir. 2007), to support its contention that the alleged faulty workmanship of AAA Construction is not an occurrence. In *Adair*, the Tenth Circuit, applying Colorado law, held that where "faulty workmanship in and of itself [is] an event triggering application of an insurance policy, such faulty workmanship is not an "accident" triggering coverage." *Id*. at 1187. But where additional damage results from such faulty workmanship, that additional damage is covered. *Id*. at 1187-88.

---

[5] The Policy states that the insurer "will have the right and duty to defend the insured against any "suit" seeking "damages for, inter alia, "property damage" but that it has no duty to defend the insured against any "suit" seeking damages for . . . "property damage" . . . to which this insurance does not apply." *Id*. at 74, Section II – Liability, Coverages, ¶ 1(a).

7

AAA Construction, conversely cites *Automax*, 720 F.3d at 804, a case in which the Tenth Circuit applied Oklahoma law, to determine whether negligent conduct constitutes an accident so as to give rise to occurrence coverage and contends under this authority, CMIC is not entitled to summary judgment. In *Automax*, the court held that under Oklahoma law, "[n]egligent conduct that, although voluntary, produces an unexpected result will be deemed an 'accident.'" *Id*. at 804. Relatedly, "a voluntary action resulting in foreseeable injury [is] not an 'accident.'" *Id*. AAA Construction points to Dr. Shaffer's testimony that the location of the barn and garage over a high-pressure gas line was an accident on AAA Construction's part and claims, therefore, that a question of fact exists as to whether AAA Construction acted negligently, and precludes summary judgment as to this issue.

In reply, CMIC argues "[i]t is nonsensical to assume that a construction company would not know to call ahead to have lines marked prior to construction, as ***that is an integral part of the construction process, and is therefore a faulty element of AAA's workmanship***." Pl.'s Reply at 11 (emphasis in original). Thus, CMIC contends that AAA Construction's assertion that a jury must determine if its failure to do so was reasonable is not a legitimate argument. *Id*.

The Court finds the Oklahoma Supreme Court's decision in *Penly v. Gulf Ins. Co*., 414 P.2d 305 (Okla. 1966) instructive to resolution of the issue. In *Penley*, the plaintiff's employee delivered to one of plaintiff's customers an order for diesel fuel for a motor grader. The delivery was made in a partitioned truck – one side held regular fuel and the

other side held diesel fuel. The employee mistakenly put regular gas in the motor grader instead of diesel fuel and the motor grader was damaged as a result.

The court was called upon to decide whether the damage to the motor grader was a covered occurrence, i.e., whether it was an accident under the terms of the plaintiff's insurance policy with defendant. The insurer argued the act of the plaintiff's employee was voluntary and the damage was the natural result of the act and, therefore, was not an accident. Conversely, the plaintiff argued the employee's negligent act was unintentional and, therefore, the resulting damage to the motor grader was caused by an accident.

The Oklahoma Supreme Court began its analysis noting as a matter of public policy, well-settled law prohibits coverage for "the act of intentionally inflicting an injury[.]" *Id*. at 308. But the court found no allegation of any intentional injury. *Id*.

The court then rejected the insurer's argument that no coverage existed because the employee's voluntary act caused damage that was the natural result of that act even if unforeseen and unintended. *Id*. at 308-09. The court cited with approval other case law concluding that coverage exists for property damage resulting from negligent conduct where there is no evidence of any intent to cause damage. *Id*. at 309.

Applying this case law, the court concluded that because neither party contended the employee "intentionally or deliberately" placed regular gas instead of diesel fuel in the motor grader nor that the employee "intentionally or deliberately intended to damage the grader" the resulting damages were caused by an accident and coverage existed. *Id*. at 309-310.

Here, CMIC points to no evidence that AAA Construction purposefully built the garage on top of the gas line or intentionally or deliberately intended to construct the garage in violation of the utility easement. Instead, the allegation in the State Action is that AAA Construction engaged in negligent conduct.[6] Because at trial "the jury could [find AAA Construction] guilty merely of negligence or other nonintentional conduct" by failing to ascertain the location of the easement, the possibility of coverage exists and gives rise to a duty to defend. *See Automax*, 720 F.3d at 805-06; *Penley*, 414 P.2d at 309.

In reaching this conclusion, the Court rejects CMIC's reliance upon *Adair*. The Tenth Circuit applied solely Colorado law in that case and the Court's analysis is divorced from any discussion of the policy language itself. Moreover, as AAA Construction argues, the property damage at issue in the State Action includes damage apart from the alleged faulty workmanship. *See* Am. Pet., ¶ 37.[7] As such, CMIC is not entitled to summary judgment on the issue of whether an occurrence triggered coverage.[8]

---

[6] The Petition includes a claim for "exemplary damages" and alleges in support that AAA Construction's actions "complained of herein were committed knowingly, willfully, maliciously, intentionally, with actual awareness, and with the specific and predetermined intention of enriching [AAA Construction] at the expense of the Shavers." *See* Pet., ¶ 37; *see also* Am. Pet., ¶ 41. This allegation does not negate the alternative allegation of negligent conduct specific to the construction of the Garage on top of the "working utility line" and the other "significant flaws and defects" accompanying the construction. *See* Am. Pet., ¶ 35.

[7] *See also Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1285 n. 10 (10th Cir. 2011) (noting that the holding in *Adair* is not applicable where damage allegations include consequential damages flowing from the poor workmanship).

[8] CMIC's summary judgment motion narrowly addresses the duty to defend. CMIC argues that because no coverage exists, the duty to defend is not triggered. CMIC has otherwise not addressed its duty to defend. As AAA Construction argues, however, if at least some conduct alleged in the State Action is covered under the Policy, the duty to defend is triggered as to all claims alleged. *See Automax*, 720 F.3d at 806.

B.     Exclusions

Having denied CMIC's motion for summary judgment on the issue of coverage, the Court next addresses the multiple exclusions CMIC relies upon in support of its request for declaratory relief. As an initial matter and as set forth above, CMIC bears the burden to establish the applicability of any exclusion. Yet, with limited exception, CMIC argues the applicability of the various exclusionary provisions in most conclusory fashion. And, CMIC leaves wholly unaddressed in its Reply any of the arguments raised by AAA Construction with respect to the inapplicability of the exclusions. Thus, as more fully set forth below, CMIC has failed to sufficiently develop its argument to support application of any of the Policy's exclusions. *See, e.g., United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1137 n. 7 (10th Cir. 2010) ("[I]ssues adverted to but unaccompanied by some effort at developed argumentation are deemed waived") (internal quotation marks omitted); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (deeming several issues waived when the support for each consisted of "mere conclusory allegations with no citations to the record or any legal authority for support."); *Western Heritage Bank v. Federal Ins. Co.*, 557 F. App'x 807, 815 (10th Cir. 2014) (deeming parties to have waived argument that exception to exclusion applied to provide insurance coverage where parties offered no developed argument as to how facts supported the same).[9]

---

[9] Indeed, CMIC's arguments before the Court simply parrot the language from its coverage denial letter to AAA Construction. *See* Correspondence [Doc. No. 17-11].

### 1. Contractual Liability Exclusion

CMIC first relies on the Policy's Contractual Liability exclusion and argues it "operates to exclude coverage for property damage for which AAA Construction assumed liability in a contract or agreement." *See* Pl.'s Mot. at 27. The exclusion provides:

> This insurance does not apply to:
>
> \*   \*   \*
>
> b.  Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

Policy at 76, Section II, Liability, B. Exclusions, ¶ 1(b).

In making this argument, CMIC acknowledges that the Garage Contract and the Barn Contract contain language pursuant to which AAA Construction assumed *no* liability for property damage. *See* Pl.'s Mot. at 25-26 (citing Contracts, Exs. 8 and 9). Nonetheless, CMIC argues that the exculpatory clause in each of the Contracts "*may* not be valid under Oklahoma law." *Id.* at 26 (emphasis added). Thus, CMIC contends that "*to the extent* the broad language of the exculpatory clause *may* be challenged by the Shavers, a Court *may determine* that AAA Construction is, in fact, liable for the Shavers' damages arising from the performance of the Contracts." Pl.'s Mot. at 27 (emphasis added). As set forth, CMIC has the burden to show that the Policy's Contractual Liability exclusion applies. CMIC fails to point to any contractual language establishing AAA Construction's assumption of liability. CMIC's speculative argument for applicability of the Policy's exclusion -- based on arguments regarding the enforceability of the exculpatory clause in the Contracts that

may or may not be raised in the underlying litigation -- is insufficient to demonstrate the exclusion applies.

### 2. Professional Services Exclusion

Next, CMIC points to the Policy's Professional Services exclusion and in wholly conclusory fashion argues this exclusion applies.[10] CMIC cites no facts or legal authority in support of this argument and on this basis alone the Court finds summary judgment in favor of CMIC under this exclusion is not proper. Additionally, the exclusion enumerates several types of services included as professional services. *See* Policy, at 79, Section II, Liability, B. Exclusions, ¶ 1(j) (1)-(9). The Policy does not expressly list construction work as part of those enumerated services. CMIC provides no factual development or legal authority to demonstrate that the construction work performed by AAA Construction constitutes professional services under the Policy's terms. The Court finds, therefore, that this exclusion does not operate to bar coverage.

### 3. Damage to Property Exclusion

Again, in wholly conclusory fashion, CMIC alleges the Policy excludes coverage "for property damage to real property on which the insured is performing operations, if the

---

[10] CMIC's entire argument consists of three sentences:

> The Policy's Professional Services Exclusion excludes from coverage property damage caused by the rendering or failure to render any professional service. [citing Policy]. Here, the Shavers are asserting claims for damages allegedly caused by AAA Construction's professional services. Thus, the Professional Services Exclusion would operate to exclude coverage for the Shavers' claims in the Logan County Action.

Pl.'s Mot. at 27.

13

property damage arises out of those operations." *See* Pl.'s Mot. at 27-28 (citing Policy at 80, Section II, Liability, B. Exclusions, ¶ 1(k)). Paragraph 1(k) includes multiple subparts and multiple exceptions to those subparts. CMIC argues "the allegations of the Shavers' Petition indicate that the alleged property damage occurred on the portion of property on which AAA Construction was working" and, therefore, "the exclusion operates to exclude coverage for any of the Shavers' damages resulting therefrom." *Id*. at 28. It appears, therefore, that CMIC specifically relies upon subparagraph (5) of exclusion k which excludes from coverage: "[t]hat particular part of real property on which you or any contractor or subcontractor working directly on your behalf is performing operations, if the "property damage" arises out of those operations." *Id*. As noted, multiple exceptions apply to the exclusion set forth in paragraph k, including an exception to the exclusion set forth in subparagraph (5) of exclusion k. CMIC leaves this exception unaddressed.

The Court finds that CMIC fails to adequately develop this argument. CMIC does not address the specific Policy language, address relevant case law, or identify facts supporting application of this exclusion. As such, CMIC fails to meet its burden to establish this exclusion applies.

### 4. The Your Product Exclusion

CMIC argues the Your Product exclusion excludes from coverage any damages for any express or implied warranties provided to the Shavers with respect to the garage to be installed on their property. *See* Pl.'s Mot. at 28. CMIC also argues that to the extent AAA Construction alleges damage occurred to its work after the Shavers halted the construction of the garage, the partially finished work falls within the exclusion and associated damages

are excluded under the Your Product exclusion. Again, CMIC does not cite to any specific allegations or identify any particular facts in support.

The Policy excludes from coverage "Property damage" to "your product" arising out of it or any part of it." *Id*. at 80, Section II, Liability, B. Exclusions, ¶ 1(l). "Property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id*. at 89, Section II, Liability, F. Liability and Medical Expenses Definitions, ¶ 17(a). "Your product" means "any goods or products" that AAA Construction "manufactured, sold, handled, distributed or disposed of" and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product." *Id*., ¶ 21. As AAA Construction argues, the damages sought in the underlying State Action include damages beyond those associated with the garage itself and, therefore, the exclusion does not relieve CMIC of its duty to defend.

### 5. The Your Work Exclusion

CMIC next argues that the Your Work exclusion applies to preclude defense and indemnification coverage for the claims made in the State Action. The exclusion excludes from coverage: "[p]roperty damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." *See* Policy, at 80, Section II, Liability, B. Exclusions, ¶ 1(m). "Your work" means "work performed by" AAA Construction and includes "warranties or representations" made in relation thereto. *Id*. at 90, Section II, Liability, F. Liability and Medical Expenses Definitions, ¶ 22 (a) and (b).

"Products-completed operations hazard" includes "property damage" arising out of "your work" subject to multiple exceptions. *Id*., at 89, ¶ 16. CMIC merely cites the Policy's exclusionary language but offers no legal or factual support. CMIC states only that: "[t]he Shavers have made claims for damages arising out of the work performed by AAA Construction, as well as for alleged breach of express and implied warranties." Pl.'s Mot. at 29. Again, CMIC has not sufficiently developed its factual or legal argument regarding applicability of the exclusion. CMIC, therefore, has failed to meet its burden of establishing the exclusion applies.

### 6. Damage to Impaired Property or Property Not Physically Injured Exclusion

Finally, CMIC points to the Damage to Impaired Property or Property Not Physically Injured Exclusion as grounds for excluding coverage for the claims asserted against AAA Construction in the State Action. *See* Pl.'s Mot. at 30-31 (citing Policy, at 80, Section II, Liability, B. Exclusions, ¶ 1(n)). As with CMIC's other arguments regarding the applicability of Policy exclusions, CMIC paraphrases the exclusion and the definitions applicable thereto and then simply concludes that: "the Shavers have made allegations in their Petition that would bring their property damage within the Policy's definition of "impaired property."" Pl.'s Mot. at 31. CMIC does not identify the allegations, adequately address the scope of the exclusion or otherwise develop this argument factually or legally. CMIC, therefore, has not met its summary judgment burden as to the applicability of this exclusion.

In sum, CMIC's request for declaratory relief that it has neither a duty to indemnify or defend, raised through its motion for summary judgment, is denied. CMIC has failed to establish, as a matter of law, that coverage does not exist under the Policy. Similarly, CMIC has failed to establish, as a matter of law, that any exclusion applies to bar coverage under the Policy.

C. **AAA Construction's Bad Faith Counterclaim**

CMIC also seeks summary judgment in its favor as to AAA Construction's counterclaim for bad faith breach of insurance contract. AAA Construction's bad faith claim is premised on the following conduct: (1) CMIC did not respond to AAA Construction's demands for defense and indemnity; (2) CMIC failed to do an adequate investigation of the claim made by AAA Construction; (3) CMIC failed to exercise its duty of defense; and (4) CMIC filed the instant action and ignored allegations of negligence in the State Action covered by the Policy. *See* Counterclaim [Doc. No. 10], ¶¶ XII-XV. CMIC focuses its summary judgment argument on the adequacy of its investigation and leaves unaddressed the other grounds upon which AAA Construction bases its bad faith counterclaim.

CMIC first argues that if the Court finds no coverage exists for the loss at issue, it is entitled to summary judgment on the bad faith claim. However, as set forth above, the Court has denied summary judgment on the issue of coverage. Therefore, CMIC is not entitled to summary judgment on the bad faith counterclaim on this basis.

Second, CMIC argues it is entitled to summary judgment on the bad faith counterclaim because a legitimate dispute as to coverage exists. CMIC argues the

"undisputed facts" demonstrate its investigation was reasonably appropriate under the circumstances. CMIC does not, however, discuss these "undisputed facts." *See* Pl.'s Mot. at 34.

A review of CMIC's statement of undisputed facts, however, references the deposition testimony of Karl Bauchmoyer, the CMIC's claims attorney who handled AAA Construction's claim. Mr. Bauchmoyer testified that he "believed" CMIC promptly investigated this claim and that when he received the claim in December 2016 he "reviewed the policy," "called the insured," and "consult[ed] outside counsel." *See* Bauchmoyer Dep. [Doc. No. 17-12] at 33:11-13; 20-25; *see also* Bauchmoyer Dep. [Doc. No. 19-1] at 34: 7-9.

In response, AAA Construction disputes that CMIC conducted any investigation of the claim. According to AAA Construction, CMIC called its insured only twice, delayed making a coverage determination, relied solely on the allegations of the Petition and Amended Petition filed in the State Action, used an unlicensed adjuster for the claim, and cited, without proper basis, multiple exclusions as grounds for denying coverage when those exclusions clearly do not apply. AAA Construction further points to evidence that CMIC did not talk to the Shavers or Southern Star as part of any investigation prior to denying coverage nor did CMIC visit the property site. Additionally, AAA Construction points to evidence that CMIC did not further investigate the claim after the Shavers filed their Amended Petition in the State Action and added a negligence cause of action.

In reply, CMIC argues it must only conduct an investigation that is "reasonably appropriate under the circumstances." *See* Pl.'s Reply at 9 (citing *Buzzard v. Farmers Ins.*

18

*Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991)). CMIC contends the undisputed factual record shows its investigation was both prompt and thorough.

A jury question as to whether an insurer has breached its duty of good faith and fair dealing arises "only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). If the facts, when construed most favorably against the insurer establish "what might reasonably be perceived as tortious conduct on the part of the insurer" a question of fact exists that must be submitted to the jury. *Id.* at 1437.

The factual record before the Court on the issue of the reasonableness of the investigation conducted by CMIC is sparse. But construing the evidence most favorably against CMIC, as the Court must, the Court denies CMIC's motion as to AAA Construction's bad faith counterclaim.

The record contains sufficient facts – albeit minimally -- upon which a reasonable juror could find the investigation conducted by CMIC was not reasonable. *See McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) ("If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."). CMIC does little more than offer Mr. Bauchmoyer's own opinion that what he did was reasonable as a basis for demonstrating the investigation conducted by it was appropriate. But CMIC does not

identify with any specificity the nature of the investigation Mr. Bauchmoyer performed or the basis upon which he denied coverage.

Moreover, CMIC fails to address the other conduct upon which AAA Construction bases its bad faith counterclaim. Notably, CMIC fails to address the broader scope of its duty to defend. Regardless whether the Court would ultimately reach the same conclusion, applying the appropriate summary judgment standard at this time and on the record presently before the Court, CMIC's motion as to AAA Construction's bad faith counterclaim is denied.

## VI. Conclusion

For the reasons set forth, Plaintiff's Motion for Summary Judgment [Doc. No. 17] is DENIED.

IT IS SO ORDERED this 12th day of July, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE